UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>**STEPHEN WILLIAM SLOAN,**<br><br>Debtor. | Case No. 20-10809-B-11 |
| SANDTON CREDIT SOLUTIONS MASTER FUND IV, LP,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN WILLIAM SLOAN, an individual; and WILLIAM BRETT SLOAN, as Trustee of the Brett Sloan Irrevocable Trust dated February 4, 2020 and as Trustee of the Grace Sloan Irrevocable Trust dated February 4, 2020,<br><br>Defendants. | Adv. Proc. No. 21-01039 |

**MEMORANDUM**

**INTRODUCTION**

Debtor Stephen Sloan ("Sloan") guaranteed a loan of about $33 million dollars made in 2017 by Sandton Credit Solutions Master Fund IV, LP ("Sandton") to 4-S Ranch Partners, LLC ("4-S") Sloan was the principal of 4-S. The loan was to refinance an acquisition loan by which 4-S purchased real properties. The properties secured Sandton's loan. The loan (and guaranty) was also secured by a large pistachio ranch Sloan owned.

Unable to perform under the loan's terms, Sloan entered into Forbearance Agreements with Sandton, the last of which was to terminate in mid-February 2020. Sandton had started foreclosure proceedings but suspended them during the forbearance period. Sloan could not perform under the Forbearance Agreements.

Meanwhile Sloan's parents transferred three parcels of property to Sloan which, Sloan claims, were to be held by Sloan until Sloan's son, Brett, had established two irrevocable trusts for Sloan's children. After the trusts were established, Sloan transferred the three parcels to Brett as Trustee, less than three weeks before Sloan filed chapter 11.

Its standing established by stipulation and through Sloan's confirmed plan, Sandton sued Sloan and Brett, as Trustee, to set aside the conveyances as avoidable. Following trial, the court finds the transfers were made with actual intent to hinder, delay, or defraud the creditors of the bankruptcy estate and holds that the transfers should be avoided.

## BACKGROUND

A. Pertinent Pre-Petition Events.

Sandton loaned 4-S over $33 million. Pre-Trial Order Doc. #218 "PTO." The loan was guaranteed by Sloan. The 4-S loan was secured by deeds of trust over property located in Merced County known as the Hamburg Ranch owned by Sloan as well as property owned by 4-S.

Less than a year later, 4-S defaulted and Sandton started foreclosure.

Forbearance Agreements were entered into between 4-S, Sloan and Sandton between May 2019 and December 2019. PTO. The final forbearance was entered into in December 2019. Sandton agreed to forbear exercising its rights provided Sloan made a payment of $1 million dollars and otherwise performed the terms of the agreement. The forbearance period would terminate on February 18, 2020. PTO.

Sloan's only sibling, Elizabeth "Beth" Johnson and Sloan testified both by alternate direct testimony and by live testimony at trial.

Beth Johnson testified that sometime in the fall of 2019 she had a conversation with Sloan's parents, William H. Sloan Jr. and June Elizabeth Sloan, concerning William's wishes about his estate plan. Their father, William H. Sloan, Jr., was seriously ill at the time. He passed away in July 2020. Trial Transcript ("TT") 45:15-18. Sloan testified that his father planned to balance the properties left to his children. Beth's Alternate Direct Testimony ("ADT Beth") 4:13-18. Sloan Alternate Direct Testimony ("ADT Sloan") 3:9-13.

One of the properties their father was concerned about is known as the Sunset property. This was formerly the family's ancestral home (APN 083-200-020). There were two adjoining parcels known as the Pioneer property (APN 083-190-025 and 083-190-026). According to Beth and Sloan, these three parcels (Pioneer and Sunset properties) were to be transferred to the grandchildren, Brett and Grace Sloan, however the irrevocable trusts that were eventually set up for Brett and Grace were not yet finalized. (ADT Beth 6:4-10; ADT Sloan 4:19-20, 5:20-6:2.)

Sloan testified that his father wanted to transfer the properties to Sloan to transfer to Sloan's children's irrevocable trusts when those trusts were completed. TT 50:9-17. The value of the properties when transferred were approximately $900,000.00.

On September 19, 2019, Sloan's parents conveyed, by grant deed to Sloan, the Pioneer and Sunset properties. These gift deeds were recorded on September 16, 2019. PTO. Two months later, Sloan conveyed the parcels to himself as trustee of the 2012 Stephen Sloan Inter Vivos Trust. PTO.

The Sunset and Pioneer parcels were never part of Sandton's collateral nor were they part of Sloan's assets when Sandton underwrote the loan to 4-S that was guaranteed by Sloan. TT 22:19-23:9.

Sloan held the Pioneer and Sunset properties individually or as trustee of his inter vivos trust for almost five months until February 4, 2020, when Sloan's 2012 Trust conveyed by gift deed the three parcels to his son, Brett Sloan, as trustee of the William Brett Sloan Irrevocable Trust dated February 4, 2020, and as trustee of the Grace Sloan Irrevocable Trust dated February 4, 2020. The transfers were recorded February 13, 2020. PTO.

Sloan received no consideration for the transfers. Sloan filed a Claim for Reassessment Exclusion for Transfer Between Parent and Child with the County of Merced on February 4, 2020, listing values totaling approximately $900,000.00 for the three parcels. Plaintiff Exhibit ("PX")-10; TT 54:17-55:3.

On February 13 and February 14, 2020, Sloan transferred thirteen other properties in three counties to his son, Brett

Sloan. (PTO.) These properties later were returned by Brett to the Sloan bankruptcy estate. These properties were collectively valued at $4.1 million.

B. Pertinent Post-Petition Events.

Eighteen days after recording the transfers of the Sunset and Pioneer parcels to his son Brett as trustee of two trusts, on March 2, 2020, Sloan filed Chapter 11.

Sloan's schedules (PX-11) revealed his 2012 trust and that it holds title to about $7 million dollars of property and that some of the property "may have been moved" to an irrevocable trust in favor of Sloan's heirs. *Id.* Sloan also states in his schedules that he had been working to convert the 2012 trust to an irrevocable trust. *Id.*

Part 9 of the Statement of Financial Affairs asks Sloan to identify property he holds or controls for another person, including "any property you borrowed from, are storing for, or hold in trust for someone." PX-11. In response, Sloan checked the box "No."

During the case and before confirmation of the reorganization plan, Sandton filed a stay relief motion. Main Case Doc. 22 WJH-2. The motion was resolved in part by Sloan agreeing Sandton would have standing to bring an Adversary Proceeding to set aside avoidable transfers. Main Case Doc. #302.

Sloan's fourth amended plan was confirmed on February 22, 2022. Main Case Doc. #483. It provides for liquidation of assets. Sloan was given a period to liquidate certain specified

assets. Thereafter, assets would be administered and sold by a plan administrator. That administrator is presently in place.

On the date of filing bankruptcy, Sloan owed Sandton over $57 million dollars. During the case, Sandton foreclosed on its collateral reducing its claim to an unsecured claim of $27 million dollars at the time of plan confirmation. Main Case Doc. #483. Sandton's original complaint was filed on September 3, 2021 (Doc. #1). On October 27, 2022, Sandton's first amended complaint was filed. That is the operative complaint in this adversary proceeding.

Sandton alleged the transfer of the Sunset and Pioneer parcels to Brett as trustee of two irrevocable trusts were actually fraudulent transfers with intent to hinder, delay, or defraud creditors and constructively fraudulent transfers made for no consideration while Sloan was insolvent under 11 U.S.C. §§ 548(a)(1)(A) and (b)(i), (ii)(I). Sandton also alleged the same claims under California's Uniform Voidable Transfers Act under 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439 et seq. Sandton also alleged the transfers should be recovered for the benefit of the estate from Brett Sloan as trustee.

In November 2024, Sandton and Brett Sloan as trustee entered into a settlement. Under the settlement, Brett would remain in the adversary proceeding as a nominal defendant only and would not contest any judgment entered in this proceeding. Doc. #763, 4:24-5:9. The court approved that settlement on November 19, 2024. Docs. #763, #794.

The matter was tried on June 23, 2026. Robert Rice, one of Sandton's principals, Stephen Sloan and Beth Sloan each

testified by alternate direct testimony and live testimony. The matter was submitted to the court on August 14, 2026, and taken under advisement after post-trial submissions.

**JURISDICTION**

United States District Court for the Eastern District of California has jurisdiction of this proceeding under 28 U.S.C. § 1334(b) as it is a civil proceeding arising under and in a case under Title 11 of the United States Code. The district court referred this matter to this court under 28 U.S.C. § 157(a). This is a matter that this court may hear and finally determine under 28 U.S.C. § 157(b)(2)(H).

**DISCUSSION**

I. The Transfers Can be Avoided as Actually Intended to Hinder, Delay, or Defraud Creditors.

11 U.S.C. § 548(a)(1)(A) permits a trustee to avoid a transfer of an interest of the debtor in property within two years before the date of the petition if the debtor voluntarily or involuntarily made such transfer with intent to hinder, delay, or defraud any entity to which the debtor was or became indebted, on or after the date that such transfer was made or such obligation was incurred.

Under Cal. Civ. Code § 3439.04(i)(1), a creditor may seek to avoid a debtor's transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

Under both statutes, the claimant seeking to avoid the transfer has the burden of proof on each element. *O'Gorman v.*

*Hoffman (In Re O'Gorman)*, 115 F.4th 1047, 1056 (9th Cir. 2024); Cal. Civ. Code § 3439.04(c). Both statutes require that the debtor have an interest in the property transferred. 11 U.S.C. § 548(a)(1); Cal. Civ. Code § 3439.01(a) – defining "asset" meaning property of the debtor except to the extent it is encumbered by a lien or generally exempt under non-bankruptcy law and "transfer" meaning every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or interest in an asset.

Intent to hinder, delay, or defraud creditors may be inferred from circumstances such as: (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special or close relationship between the debtor and the transferee; (5) the debtor's continued possession and use of the property after the putative transfer. *Acequia, Inc. v. Clinton (In Acequia, Inc.)*, 34 F.3d 800, 805-806 (9th Cir. 1994). The court, however, is not limited to those circumstances when determining the debtor's intent in making the transfer. *In Re Kinnerson*, 16-22163-A-7; Adv. No. 16-02134; 2017 WL 6021318 (Bankr. E.D. Cal., December 4, 2017).

In the same vein, Cal. Civ. Code § 3439.04(b) lists factors from which a court may infer an intent to hinder, delay, or defraud. Those include: (1) whether the transfer or obligation was to an insider; (2) whether the debtor retained possession or control of the property transferred after the transfer; (3) whether the transfer or obligation was disclosed or concealed;

(4) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) whether the transfer was substantially all of the debtor's assets; (6) whether the debtor absconded; (7) whether the debtor removed or concealed assets; (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor. These so called "badges of fraud" are relevant when a court considers whether a transfer is avoidable under 11 U.S.C. § 548 even though implication or construction of that section is a matter of federal law. *See, O'Gorman*, 115 F.4th at 1059 fn. 5. Sandton here points to several "badges of fraud" that it asserts establishes a basis to avoid the transfer of the Pioneer and Sunset properties by debtor Stephen Sloan to Brett Sloan. The court generally agrees.

First, the transfer of the property was to the debtor's son, Brett Sloan as trustee. Brett is an insider and certainly has a close relationship with Sloan.

Second, at least as to Sandton, there was unmanageable indebtedness on the part of Sloan at the time of the transfers. The parties in this case have stipulated that Sloan owed Sandton over $57 million dollars when the petition was filed. PTO.

Sandton had already initiated non-judicial foreclosure of the real property owned by 4-S and that Sloan individually pledged as collateral when the transfers were made.

Third, the transfers of the Sunset and Pioneer properties were at the same time as numerous other transfers of real property were made to Brett Sloan. True enough, many of those properties were retransferred by Brett to the estate prior to the filing of the first amended complaint here.

Fourth, the transfers were not revealed on the debtor's schedules. In fact, in response to the pertinent question on the Statement of Affairs the debtor answered that he did not hold any property for the benefit of another person. It is well settled that the debtor has a duty to prepare bankruptcy schedules and statements carefully, completely, and accurately and bears the risk of non-disclosure. *Diamond Z Trailer, Inc. v. JZ, LLC*, 371 B.R. 412, 417 (B.A.P. 9th Cir. 2007 quoting *Cusano v. Klein*, 264 F.3d 936, 946-49 (9th Cir. 2001).

Though there are no bright line rules for how much itemization and specificity is required in a bankruptcy schedule, the schedules must be as particular as reasonable under the circumstances. *Cusano*, 264 Fd. at 946 quoting *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992).

The debtor here did not conspicuously reveal the transfers. Subjectively, Sloan may have thought it was unnecessary since he believed the property was eventually to be in his children's trusts. However, he had sufficient opportunity in his chapter 11 case to be more forthright.

///

Fifth, it is uncontested that Sloan received no consideration for the transfers to Brett.

Sloan argues otherwise. Primarily he contends that he held the properties in a resulting trust for the benefit of his children following the wishes of his father and mother. Sloan argues that his sister confirmed the intention of his parents and his sister's testimony to that effect should be given great weight since she was not going to benefit from the transfer of the properties to Brett Sloan as trustee.

Under California law, a resulting trust arises under circumstances showing that the transferee was not intended to take the beneficial interest. *Siegel v. Barton*, 220 B.R. 660, 664 (B.A.P. 9th Cir. 1998). Sloan asserts that while he had title to the properties, it was bare legal title since the beneficial interest was always intended to be for his children. It is true that the transfer of the interest of the debtor in property refers to property that would have been part of the estate had it not been transferred before bankruptcy. *In re Beverly*, 374 B.R. 221, 233 (B.A.P. 9th Cir. 2007) citations omitted. In other words, the focus is on the interest of the debtor that was transferred. *Id.* Specific evidence may negate an inference of fraud notwithstanding the presence of a number of "badges of fraud." *Id.* at page 236 citing *Filip v. Bucurenciu*, 129 Cal.App. 4th 825; 28 Cal.Rptr. 3d 884, 890 (2005); *Annod Corp. v. Hamilton & Samuels*, 100 Cal.App 4th 1286; 123 Cal.Rptr. 2d 924, 932-33 (2002) ("a court must consider all relevant circumstances"). See also, *Lloyds Bank of California v. Wells Fargo Bank*, 187 Cal.App 3d 1038, 1042 (1986) (No

resulting trust when there is a lack of evidence the grantor intended to transfer other than as set forth in the deed.)

One significant problem with Sloan's position is that it is well settled that an exception to the general rule concerning resulting trusts are transactions between a parent and a child. These transactions are presumed to be in the nature of gifts, advancements, or bounties. In short, the existence of the relationship of parent and child is a circumstance which prima facie establishes the presumption of an advancement and thereby rebuts the presumption of a resulting trust. *Id.* at page 1044 quoting *Estate of Schechtman*, 162 Cal.App 2d 365, 370 (1958). It is a presumption affecting the burden of proof. See, *Ceguerra v. Secretary of HHS*, 933 F.2d 735, 739-40 fn. 4 (9th Cir. 1991).

In addition to the common law presumption, Cal. Evidence Code § 662 provides:

> The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof.

So, Sloan's proof of a resulting trust must be clear and convincing. It is not.

First, after Sloan received the properties from his parents he did not immediately transfer them. He held the properties for over five months. His control over the properties was demonstrated by his unilateral decision to put the properties into an inter vivos trust which had been established by Sloan since 2012. Sloan's response is that he could not transfer the properties to Brett as trustee because the irrevocable trusts

for Brett Sloan and Grace Sloan, his children, were not completed. That may be true, However, there was no evidence as to why they were not completed. No evidence was presented by Sloan's estate planning attorneys. Sloan had control of any attorney client privilege since his father had passed away. His mother, according to Beth Sloan's testimony, had dementia that may have meant Sloan's mother could not realistically waive her privilege. But Sloan could waive his.

Second, as mentioned above, Sloan's representations in his bankruptcy schedules were inconsistent with him taking the position that he was a "mere conduit" of the properties.

Third, there were alternatives available to Sloan's father and mother. For example, they could have transferred the Sunset and Pioneer properties to Beth Sloan to hold for the benefit of Brett Sloan as trustee. No evidence was presented explaining why that option was not pursued. There was no evidence as to why the transfer could not have been made directly to Brett Sloan bypassing the debtor here given the debtor's mounting and seemingly unmanageable debt problems leading up to his bankruptcy filing in March 2020.

Though somewhat cumbersome, there was also the option of Sloan's parents transferring the properties to an escrow holder with instructions that the escrow holder would transfer the properties to the Brett Sloan and Grace Sloan trusts when appropriate.

In the face of these facts, the testimony of Sloan and his sister does not amount to clear and convincing proof. Though testimony concerning their father's plan or intentions was not

hearsay. Fed. R. Evid. 803(d). That simply means it was not excluded. It was not entitled to significant weight. Beth could not recall specifics as to when she had any conversations with her father concerning his estate plan when asked on cross-examination. Sloan was equally vague on the timeline and ultimately it was speculative as to how and why this estate plan was going to be accomplished.

The court also heard testimony that the elder Mr. Sloan was one who wished to act quickly once he made up his mind. That does not explain why the transfer of the Sunset and Pioneer properties went to Sloan in the first place. That just explains the speed with which the elder Mr. Sloan wanted the estate plan to be accomplished.

On balance then, Sloan does not by clear and convincing evidence overcome the presumption that he held beneficial title at the time he transferred the Sunset and Pioneer properties to his son Brett Sloan as Trustee of the Brett Sloan irrevocable trust and Grace Sloan irrevocable trust.

II. Plaintiff did not Meet its Burden of Proof on Constructive Fraud Claims.

Sandton urges that the transfers of the Sunset and Pioneer properties can be voided under both bankruptcy and California law because they were "constructively fraudulent." Specifically, Sandton claims that Sloan received no consideration for the transfers and was insolvent at the time of the transfers, 11 U.S.C. § 548(a)(1)(B)(i), (ii)(I); Cal. Civ. Code § 3439.05(a).

///

The court is unconvinced. Sandton has not proved insolvency by a preponderance of the evidence.

Under the Bankruptcy Code, insolvency as applicable in this case means a financial condition "such that the sum of [Sloan's] debts is greater than all of [Sloan's] property, at a fair evaluation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted." 11 U.S.C. § 101(32)(A).

True enough, Sloan's bankruptcy schedules as well as admitted facts in this adversary proceeding show Sloan had assets totaling slightly over $36 million dollars and debts of over $57 million dollars. Based on a "balance sheet" test, Sloan appeared insolvent on the date of filing the bankruptcy case.

However, Sandton provided no evidence of Sloan's solvency other than relying upon Sloan's testimony at trial and bankruptcy schedules. Sloan's testimony was that he did not believe he was insolvent until he filed the bankruptcy case. Debtor was the principal of 4-S. (See *In re 4-S Ranch Partners, LLC*, Case #20-10809.) 4-S scheduled the value of the real property assets as $500 million dollars with total real and personal property assets totaling $703 million dollars. (Summary of Assets and Liabilities and Schedule A/B at page 1-9 of Doc. #18 in the 4-S case.) Sandton encumbered the real property in the 4-S case.[1] In the debtor's amended schedules,

[1] The substantial value attributed by the debtor to 4-S is likely based on the

the 4-S Ranch Partners property had an estimated value of $300 million or more with approximately $55 million of debt against the property. Main Case Doc. #19. Debtor scheduled the interest in 4-S Ranch Partners as having "unknown value" not "zero value." Yet Sandton provided no evidence to contradict Sloan's estimates.

California's version of the UVTA contains virtually the same definition of insolvency. Civil Code § 3439.02(a). Sandton argues that Sloan was not generally paying the debtor's debts as they became due and therefore Sloan should be presumed to be insolvent. Cal. Civ. Code § 3439.02(b). Sandton correctly notes that the presumption imposes on the party against which the presumption is directed (here, Sloan) the burden of proving the non-existence of insolvency is more probable than its existence.

Sloan did prove the non-existence of insolvency was more probable at the time of the transfers. Sloan's own schedules show that he valued his interest in 4-S substantially more than what was owed Sandton. True enough, Sandton is correct that Sloan was not paying the debts owed Sandton under the terms of the original loan agreement or forbearance agreements. But Sandton had no counter evidence as to the value of the debtor's other assets.

---

debtor's use of the property as a source of water to be sold before the passage of the Sustainable Groundwater Management Act ("SGMA"). After the enactment of SGMA, Debtor made efforts to sell water from the 4-S property. However, those efforts did not coincide with the forbearance periods agreed upon by Sandton pre-petition. Main Case Doc. #440 pages 6-8. Sandton provided no evidence concerning the value of the 4-S interest or other property owned by Sloan at the time of the transfers. Sandton solely relied on the debtor's valuations.

Cal. Civ. Code § 3439.05(b) plainly provides that Sandton has the burden of proving the elements by a preponderance of the evidence. Sandton did not prove the value of Sloan's assets at fair valuation at the time of the transfers. Rather, Sandton, using the debtor's schedules, speculated that when the transfers were made, Sloan's assets did not exceed his debts. Given Sloan's testimony and statements in his schedules, Sandton needed to provide more evidence than presented.

Under Federal Rule of Evidence 301, Sloan had the burden of producing evidence to rebut the presumption. However, Sandton still had the burden of persuasion as to the insolvency issue. Fed. R. Evid. 301, 302. Sloan presented evidence that he was not insolvent at the time of the transfers. Sandton had the burden of proof to establish a constructively fraudulent transfer. For the reasons indicated, they did not meet that burden of proof for the constructively fraudulent transfer on the issue of insolvency.

III. <u>No Relief can be Awarded Against Sloan, Individually</u>.

Case law is fairly clear that the transferor is not a necessary party in an action to set aside a fraudulent conveyance. *Koeberer v. California Bank of Commerce, et al. (In re Koeberer)*, 632 B.R. 680, 688, fn.3 (B.A.P. 9th Cir. 2021). However, if the transferor retained an interest in the fraudulently transferred asset, the transferor is a properly named party. *Scoggins v. Fredrick*, 629 F.2d 426 (5th Cir. 1980); *Takiguchi v. MRI International, Inc.*, 2:13-cv-01183-JAD-VCF; 2015 WL 13677808*2 (D.Nev. January 23, 2015). There was no

evidence presented that Sloan retained any interest when he transferred the Sunset and Pioneer parcels to Brett Sloan as trustee.

The transferee here, Brett Sloan as Trustee of the Brett Sloan Irrevocable Trust and as Trustee of the Grace Sloan Irrevocable Trust has agreed to bound by the judgment in this matter even though he did not participate or present any defense to the transfers.

Since Sloan retained no interest, he, in his individual capacity, will be dismissed.

IV. Attorneys' Fees.

Sandton seeks its attorneys' fees and argues that it is entitled to attorneys' fees as the prevailing party. It is unclear if Sandton will be seeking an award of attorneys' on a contract basis or as an administrative expense under 11 U.S.C. § 503(b)(3), (4) or both.

Nevertheless, Sandton's right to attorneys' fees or expenses on either basis may be sought under Fed. R. Civ. Proc. 54(d)(2) as applicable under Fed. R. Banky. Proc. 7054. Any request for attorneys' fees will need to be served upon all necessary parties.

**CONCLUSION**

For the foregoing reasons, judgment shall be entered against Defendant Brett Sloan as Trustee of the Brett Sloan Irrevocable Trust and Brett Sloan as Trustee of the Grace Sloan Irrevocable Trust avoiding the transfers of Merced County APN

083-190-025; Merced County APN 083-190-026; and Merced County APN 083-200-020. Those properties shall be transferred to Stephen Sloan within twenty-one (21) days of entry of judgment to be administered by the plan administrator in Sloan's main bankruptcy case. Any claim of Sandton for attorneys' fees shall be in accordance with Fed. R. Civ. Proc. 54(c) as applicable to bankruptcy adversary proceedings under Fed. R. Banky. Proc. 7054. Judgment to be prepared by counsel for Sandton and approved as to form only by counsel for Stephen Sloan. Form of judgment to be submitted to the court within fourteen (14) days of the date of this memorandum.[2]

**Dated:** Aug 27, 2026

**By the Court**

René Lastreto II

**René Lastreto II, Judge**
**United States Bankruptcy Court**

[2] The forgoing are the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. Proc. 52 as made applicable to bankruptcy adversary proceedings by Fed. R. Banky. Proc. 7052. Any finding of fact which is deemed a conclusion of law is adopted as such. Any conclusion of law which is deemed a finding of fact is adopted as such.

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Kurt F. Vote
Steven K. Vote
265 E. River Park Circle, Suite 310
Fresno CA 93720

Peter A. Sauer
7650 North Palm Avenue, Suite 101
Fresno CA 93711

Peter L. Fear
7650 North Palm Avenue, Suite 101
Fresno CA 93711